## Case No. 10.520.

### ONE HUNDRED AND FIFTY–ONE TONS OF COAL.

[4 Blatchf. 368; 15 Int. Rev. Rec. 34; 6 Am. Law Rev. 759.] [1]

Circuit Court, S. D. New York. Sept. 30, 1859. [2]

CARRIERS—LIEN FOR FREIGHT—DELIVERY—EFFECT.

1. The mere manual delivery of an article by a carrier to the consignee, does not, of itself, operate necessarily to discharge the carrier's lien for the freight; but the delivery must be made with the intent of parting with the lien.

> [Cited in The Santee, Case No. 12,328; Six Hundred Tons of Iron Ore, 9 Fed. 597. Distinguished in Costello v. 734,700 Laths, 44 Fed. 108.]

2. A delivery made under the expectation that the freight will be paid at the time, is not such a delivery as parts with the lien, and the carrier may afterwards libel the article in rem, in admiralty, for the freight.

> [Distinguished in Egan v. A Cargo of Spruce Lath.]

[3. Cited in The Mary K. Campbell, 40 Fed. 907, to the point that the application by the court of payments to items not liens is unobjectionable, if there has been no special application by the parties.]

[Appeal from the district court of the United States for the Southern district of New York.]

This was a libel in rem, filed [by John Gaughran] in the district court, to recover freight for the transportation of one hundred and fifty-one tons of coal. After a decree by that court in favor of the libellant [Case No. 5,273], the claimant appealed to this court.

Charles L. Benedict and Burr & Benedict, for libellant.

John E. Burrill, Jr., and Davidson & Burrill, for claimant.

NELSON, Circuit Justice. According to the bill of lading in this case, the coal was

1 [Reported by Hon. Samuel Blatchford, District Judge, and here reprinted by permission. 6 Am. Law Rev. 759, contains only a partial report.]

2 [Affirming Case No. 5,273.]

to be delivered at Peck slip, East river, to William Jarvis, or his assigns, on the payment of freight, at one dollar and eighty-five cents per ton. The libel charges, that the vessel arrived, with the coal, at the port of New York; that notice was given to the consignee, who requested that it might be delivered at his place of business in the city, 59 Ann street, and agreed to pay the expense of such delivery at the rate of twenty-five cents per load; that the coal was delivered accordingly, in good order and condition, and accepted and received by him; and that, nevertheless, he refused to pay the freight and the expense of delivering the coal. An answer was put in, but it is not material to notice it, as the case was heard in the court below, and in this court, upon the admission by the claimant, that the facts were as stated in the libel. I lay out of view the deposition taken and produced in this court, as not put in in time to be read as a part of the proof.

The question presented is, whether or not, upon the case as made out in the libel, the libellant, by delivering the coal, parted with his lien upon it for the freight? If he did, he cannot pursue and attach it in the admiralty, as being still a security for the freight money. The claimant must defeat the demand, if at all, upon a dry point of law, as the case admitted assumes that the money is justly due to the libellant, and the rights of no third or innocent party exist or intervene. Now, the mere manual delivery of the coal by the carrier to the consignee, does not, of itself, operate, necessarily, to discharge the lien. The delivery must be made with the intent of parting with his interest in it, or under circumstances from which the law will infer such an intent. The act of the party is characterized by the intent with which it is performed, either expressly or by necessary implication. Therefore, a delivery of the article according to the terms of the bill of lading, and the taking possession of it by the consignee, under the expectation that the freight will be paid at the time, is not such a delivery as parts with the lien.

I remember a class of cases, where, by the bill of lading, the freight was to be paid on delivery, but, according to usage, the bills were not presented till two or three days afterwards, so that the consignee might have time to ascertain the correctness of the shipment of the goods, and in which it was held, that, as between the parties, the delivery was conditional, not to become absolute till the payment of the money. It was otherwise where the rights of third parties intervened. These cases illustrate the principle above stated.

Now, as I understand this case, as presented in the libel, the demand of the freight was made as soon as the coal was delivered, and the delivery was made under an expectation of the payment. According to the bill of lading, the coal was to be delivered at Peck slip; but, by an agreement between the parties,

the place was changed to 59 Ann street. This changed the mode of delivery. Instead of being delivered at the dock, or the ship's tackle. it was delivered in carts, and, when thus delivered, to the satisfaction of the consignee, the payment was demanded. This is, I think, the fair interpretation of the facts admitted, and, in this view, it is clear that the lien was not discharged.

As to the objection that the court below included in its decree the amount of the cartage across the city, it is not sustained. as will be seen by a reference to the decree itself. It allows the cartage to be deducted from any payments that may have been previously made. Whether any had been so made nowhere appears, and, if they had, unless they were specially made upon the freight, the application of them to the cartage would be unobjectionable. Decree affirmed.

---

ONE HUNDRED AND FIFTY-ONE TONS OF COAL (GAUGHRAN v.). See Case No. 5,273.

ONE HUNDRED AND FIFTY-SIX PACKAGES OF TEA (UNITED STATES v.). See Case No. 15.933.

ONE HUNDRED AND FIFTY-THREE BARRELS OF DISTILLED SPIRITS (UNITED STATES v.). See Case No. 15,-934.

ONE HUNDRED AND FORTY BARRELS OF FLOUR (SPRAGUE v.). See Case No. 13,253.

ONE HUNDRED AND FORTY-SIX THOUSAND, SIX HUNDRED AND FIFTY CLAPBOARDS (UNITED STATES v.). See Case No. 15,935.