## EGAN *v.* A CARGO OF SPRUCE LATH.[1]

*(District Court, S. D. New York. February 25, 1890.)*

1. MARITIME LIENS—FREIGHT AND DEMURRAGE—LOST BY UNCONDITIONAL DELIVERY.
   Unconditional delivery of cargo destroys the carrier's lien for freight and demurrage.
2. SAME.
   A cargo of lath, sold by the consignee to the claimant before arrival, was discharged without notice to claimant of any lien or claim for freight and demurrage, it being customary in the port of New York to discharge cargoes from canal-boats before demanding freight and demurrage, and the laths, as fast as they were discharged, were received by the vendee, and transported from the wharf to his lumber-yard, a half mile distant. Libelant's claim for freight and demurrage against the consignee and shipper being afterwards disputed as to amount, this libel was filed five days after the discharge was completed to establish a lien. *Held,* that as the delivery was unconditional the lien had been lost.

In Admiralty. Action for freight and demurrage.

[1] Reported by Edward G. Benedict, Esq., of the New York bar.

*Hyland & Zabriskie,* for libelant.
*Benjamin Barker, Jr.,* for claimant.

BROWN, J. The above libel was filed to recover an unpaid balance of freight on a cargo of laths brought from Quebec to New York. At Whitehall new bills of lading were issued, and the cargo consigned to Irving Wyatt, of this city. By him the cargo was sold before arrival to the claimant, Frank E. Smith, free of charges; but the bills of lading were not transferred. As the laths were discharged upon the wharf, they were received by the claimant, and transported to his lumber-yard, about a half mile distant. Five days after delivery this libel was filed. The case was submitted upon a brief statement of facts, by which, in addition to the above, the following appeared:

"The discharge was made without knowledge on the part of the libelant that it was to any other than to the consignee, and in the expectation that all claims against the cargo would be paid by said consignee or the shipper on the completion of the discharge, and without any notice of any claim or lien for freight or demurrage being made upon the claimant at the time of the discharge of the cargo, or before the commencement of this suit by the filing of the libel, five days later. It is customary to discharge the cargo from canal-boats before demanding freight and demurrage, in the port of New York. After the discharge had been completed, and the laths placed on the premises of the claimant, the libelant's claim for freight and demurrage was disputed, as to amount, by the consignee of the cargo and the shippers, and this action was commenced to establish a lien."

The rule of law on this subject is laid down by the supreme court in the case of *Bags of Linseed,* 1 Black, 108. The facts of that case do not appear to me any more unfavorable to the existence of a lien than in this case, and there the libel was dismissed. There, Wills, the consignee, was sick at the time of the arrival of the cargo, and died before the discharge was completed. His agent, before the consignee's death, had made one part-payment on account. But though in that case some special reasons existed why delivery after the consignee's death might have been deemed a qualified delivery by implication, yet it was held that the delivery, being without any actual condition or qualification, put an end to the lien. The most favorable passage in the opinion of the court states that where an understanding exists between the parties that the transfer of goods from the ship to the warehouse shall not be regarded as a waiver of the lien, and that the shipper reserves the right to proceed *in rem* to enforce it if the consignee cannot pay him, or if such an understanding is plainly to be inferred from the established local usage of the port, the court of admiralty will regard the transaction as a deposit of the goods for the time in the warehouse, and not an absolute delivery, and the lien will be preserved. In the case of *Wilcox* v. *500 Tons of Coal,* 14 Fed. Rep. 49, Judge DRUMMOND states his understanding of the rule of the above case to be that to retain the lien "there must be an understanding between the parties that the lien of the ship-owner remains upon the cargo, or it must appear there is an established local usage of the port

where the cargo is delivered that the lien shall remain;" and there also the libel was dismissed.

The agreed statement of facts, as it seems to me, does not establish a lien under the above authorities. There is no statement of any understanding that the lien should remain; nor does the alleged custom aver the retention of any right to proceed *in rem* after delivery of cargo, nor any understanding or practice to that effect. The libelant relies on the language of Mr. Justice NELSON in the case of *151 Tons of Coal*, 4 Blatchf. 368, where the intent is made the controlling circumstance; and where it is said that "a delivery of the article according to the terms of the bill of lading, * * * under the expectation that the freight will be paid at the time, is not such a delivery as parts with the lien." The facts there accord with the opinion and decision. The circumstances, as reported, plainly indicate that immediate payment was expected from the consignee at the moment delivery was completed. The delivery was necessary to enable payment to be demanded, and the refusal of the consignee to pay appears in the report as a *quasi* fraud. The demand of payment was made upon the consignee as soon as the contract and delivery were complete.

In the present case the statement of facts does not show when the demand of payment was first made, except that it was made after the discharge had been completed; nor does it show that any demand on the claimant was made by the libelant as soon as he learned that the claimant had received the laths; nor that the consignee did not offer to pay him all that was just in, or that he had any idea of holding the laths until a dispute arose with the consignee "as to amount." The demand on the claimant certainly was not made as soon as the discharge was completed, nor of the claimant to whom the delivery was made, nor on the claimant's premises, at the place to which laths were carried as discharged. The necessary inference from the statement of facts is that the libelant paid no attention where the laths went when discharged, as he would have done had he intended to hold on to his lien. And the further statement that the delivery was made in the expectation of payment "by the consignee or shippers" is not compatible, it seems to me, with the idea of any conditional delivery at the wharf, or retention of a lien after the laths were discharged and carried away, because the complaint states that the original shipment was at Quebec, and the reshipment at Whitehall; and the expected resort "to the shipper" at Quebec or Whitehall, for the freight and demurrage, if not paid by the consignee, coupled with the fact that the libelant permitted the laths to be at once carted from the wharf as fast as discharged, presumably for consumption, without inquiring who was taking them away, or where they were going, and without any notice at the time of intention to hold the laths for payment of freight and demurrage, is inconsistent with any intention at that time to hold a lien on them after delivery. As in the cases above cited, the delivery must therefore be held unconditional, and the libel dismissed, with costs.